CHARLES GREENWOOD *vs.* ELOUISE McGILVRAY, administratrix.

Suffolk. March 21. — May 6, 1876. Sept. 7, — 8, 1876. DEVENS & LORD, JJ., absent.

An action against an administrator was referred by rule of court, and the referee returned his award in favor of the plaintiff. The administrator then, by proceedings in the Probate Court, represented the estate insolvent, and commissioners were appointed by that court to receive and examine the claims of creditors. *Held,* that the plaintiff was entitled to judgment on the award, and to an execution for his costs against the administrator personally, but that execution for the damages awarded must be stayed to await the determination of the proceedings in the Probate Court. *Held, also,* that, on the motion for judgment on the award, a court of law could not try the question of the validity of other claims against the estate, in order to determine whether the estate was or was not insolvent.

CONTRACT against the administratrix of David F. McGilvray. Writ dated October 28, 1872. Trial in this court, before *Gray*, C. J., who reported the case to the full court, in substance as follows :

The defendant having obtained leave from the Probate Court to adjust this suit by arbitration, upon agreement of the parties it was referred by rule of court, October 21, 1874, and the ref-

eree returned his award in favor of the plaintiff on January 15, 1876.

On February 10, 1876, the defendant filed a supplemental answer, alleging that she had represented the estate insolvent, and commissioners had been appointed by the Probate Court, and moving for a continuance of the suit to await the proceedings in the Probate Court. The plaintiff moved for judgment upon the award.

At the hearing upon these motions, the following facts were admitted : On September 25, 1871, the defendant was appointed administratrix, and gave bond for $25,000. At about the same time, it was intimated to her by a third party that the plaintiff intended to make a claim against the estate, and on March 17, 1872, he himself informed her verbally that he had such a claim, and in August, 1872, she received written notice from the plaintiff of his demand, in which were stated the several claims involved in this suit, amounting in all to $17,852.88. On September 27, 1873, the defendant made and obtained leave to file in the Probate Court an affidavit that she gave notice of her appointment within three months from September 25, 1871. On February 7, 1876, she filed in the Probate Court the statement of debts and representation of insolvency, and commissioners were appointed to receive and examine the claims of creditors. The first and only appraisal of the estate was made February 8, 1876, by appraisers appointed February 7, 1876, and the defendant's only inventory was filed February 9, 1876, and which included nothing besides property and the proceeds and income from property within the defendant's control and knowledge at the commencement of her administration of the estate.

Copies of the statement of debts, representation of insolvency, and the appraisement of the estate were annexed to the report. The statement of debts showed debts due persons other than the plaintiff amounting to $18,600, and stated that the " administratrix, believing no other debts to exist and that the said estate was solvent, paid, within a year or thereabouts after the decease of said McGilvray, all the above mentioned debts." The statement then set forth the award in the present case, that the damages and costs therein amounted to over twelve thousand dollars ; that the estate not having sufficient cash assets to pay the

first above mentioned debts, the administratrix, from time to time, advanced to said estate money of her own to pay said debts, and had reimbursed herself, from time to time, as she collected the assets of the estate; that the award, together with the first named debts, with the expenses and charges of administration, amounted to more than the whole assets of the estate in her hands as administratrix; and that the estate was insolvent, if the award was sustained.

The representation of insolvency set forth debts claimed to be due from the estate to the amount of $30,600, funeral expenses, $150, and charges of administration, $4000, making in all $34,750; and the assets: real estate, $10,000, and personal, $19,000, making in all $29,000; that the estate was probably insolvent, and praying for the appointment of commissioners.

The appraisement stated the real estate to be valued at $6000, and the personal at $18,460.

It was ruled that the plaintiff was entitled to judgment on the award, but not to execution thereon, and the case was reserved, at the plaintiff's request, for the consideration of the full court, such judgment or order to be made as law and justice may require.

*T. H. Sweetser & W. H. Drury*, for the plaintiff.

*T. H. Russell & C. T. Russell, Jr.*, for the defendant, were not called upon.

ENDICOTT, J. The statutes of this Commonwealth provide that the distribution of the estate of a deceased person, when insolvent, shall be made in the Probate Court. Gen. Sts. *c.* 99. When, on the representation of an executor or administrator, it appears that the estate in his hands is probably insufficient for the payment of the debts of the deceased, the judge of probate may appoint commissioners to receive and examine all claims, and return a list of those laid before them, and the sums they have allowed. The St. of 1873, *c.* 252, empowering the judge of probate to receive, examine and allow such claims, instead of appointing commissioners, has no application to this case, as commissioners were appointed.

Before appointing commissioners, the judge of probate is not called upon to pass upon the validity of the claims presented he is only to ascertain whether, upon the representation made,

" it appears that the estate of the deceased will probably be insufficient for the payment of his debts." Such appointment does not settle or determine whether the claims are just claims, or that the estate is in fact insolvent. The commissioners thus appointed are sworn officers, to whom the duty is delegated of determining what claims shall be allowed as debts; and as they decide upon the claims laid before them, and make return thereof, the question of insolvency is decided. Any person whose claim is disallowed in whole or in part, or any executor or administrator, dissatisfied with the allowance of any claim, may appeal, and the claim shall be determined at common law in this court or the Superior Court, according to its amount; and the case shall be tried as if the supposed creditor had brought his action against the executor or administrator. Gen. Sts. *c.* 99, § 8. This section has been amended by adding that any heir, legatee, devisee or creditor of the estate may appeal from the allowance of any claim by the commissioners. St. 1865, *c.* 258.

When the commissioners make their return, the judge of probate does not pass thereon. If it appears that the debts allowed do not exceed the assets, the estate must be settled as if no representation had been made. If they do exceed the assets, and an appeal is not taken within thirty days, the return of the commissioners is conclusive, and the estate must be distributed accordingly. If there is an appeal, the settlement of the estate must await the decision of the appeal.

The appeal is to be prosecuted as in actions at law, except that no execution shall be awarded against the executor or administrator for a debt found due the claimant. But the final judgment so obtained is conclusive, and the list of debts found by the commissioners shall be altered, if necessary, to conform thereto. Gen. Sts. *c.* 99, § 10. If an action is pending at the time the estate is represented to be insolvent, the action may be discontinued, in which case the creditor may prove his claim before the commissioners; or if it is disputed, it may be tried, and judgment rendered " in the same manner and with the same effect as is provided in the case of an appeal from the award of commissioners," (in which case the judgment is conclusive, but no execution can issue,) or it may be continued until it appears

that the estate is insolvent, and, if not insolvent, it may be prosecuted as if no representation of insolvency had been made. § 20. The same section also provides that no action shall be maintained by a creditor after an estate is represented to be insolvent, unless for a demand entitled to a preference, or unless the assets prove more than sufficient to pay all the debts allowed by the commissioners.

It is obvious from this review of the statutes, that they are intended to establish a complete system of procedure in the Probate Court for the equal distribution of the assets of a deceased person among all his creditors in the event of insolvency, and to confer upon the Probate Court exclusive jurisdiction in making such distribution after the debts due to the creditors are finally determined, and the fact of insolvency is established.

In the case at bar, the representation of insolvency and the appointment of commissioners were made after the award was returned, and before judgment was entered. It comes clearly within the provisions of § 20, and while judgment might rightly be entered, the presiding judge properly refused to allow execution to issue.

As before stated, the order of the judge of probate appointing commissioners does not establish the fact of insolvency, or involve any decision as to the validity of the claims represented by the administrator to have been made upon the estate. Those questions have been delegated to commissioners, who are officers designated by the statute to determine them. If the claims, which the plaintiff contends cannot now be enforced against the estate, are allowed by the commissioners, the plaintiff can on appeal determine their validity; St. 1865, c. 258; if not allowed, and the estate does not appear to be insolvent, he can have his execution. To try, in an action at law pending against an estate when a representation of insolvency is made, the validity of one or more claims pending before the commissioners, would be to defeat the obvious intent of the statute.

If the plaintiff's view is correct, whenever, on representation of insolvency by an executor or administrator, commissioners have been appointed by the Probate Court, the question may be tried in every suit then pending against the estate, whether any or all the claims so sent to commissioners for determination can

be lawfully allowed by them. It is evident that such a course might result in several trials of the same questions before different tribunals, with different results, and great confusion and embarrassment might ensue ; and we are of opinion that the course pointed out by the statutes must be followed by the plaintiff, and that he cannot try those questions in this case.

The case does not fall within the principle laid down in numerous decisions of this court, some of which are cited by the plaintiff, that where the Probate Court exceeds its powers, or does an act prohibited by law, its decree may be avoided, not only by appeal, but in collateral proceedings.

*Judgment for the plaintiff, and execution stayed.*

The plaintiff subsequently filed a motion that an order be made that execution for costs issue against the defendant.

*W. H. Drury*, for the plaintiff.

*C. T. Russell & T. H. Russell*, for the defendant.

ENDICOTT, J. At the former argument, the question was not presented, whether an execution for costs could issue while the execution for the debt is stayed.

When a judgment is entered for debt or damages against an executor, the costs, as in other cases, follow the judgment; and the statute provides that two executions may issue: one for the debt, against the goods and estate of the deceased in the hands of the executor; and another for the costs, against the goods, estate and body of the executor, as if for his own debt. Gen. Sts. c. 128, §§ 6–8. The execution for the debt may be stayed by proceeding in insolvency ; Gen. Sts. c. 99, § 10 ; but there is no provision for staying the execution for the costs.

The first execution cannot issue, because the Gen. Sts. c. 99, § 10, provide that the judgment for the amount of the debt shall not be satisfied on execution, when commissioners have been appointed, but may be satisfied, in whole or in part, in the Probate Court. Ordinarily, the execution for costs against the executor would not precede the execution for the debt against the estate ; but when, in case of insolvency, the judgment for the debt must be paid in another way, an execution for costs may issue, although no execution can issue for the debt. The words " an other execution for the costs," in *c.* 128, § 8, mean a different or

separate execution, and the right to take it out is not lost because the execution for the debt is stayed. The costs thus imposed upon the executrix in this case may be allowed in her account in the Probate Court, if there was reasonable cause for the defence of the suit.                         *Execution for costs to issue.*